IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **ANTHONY T. HARRELSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 5:10-0216 |
| ) | |
| **KEVIN CANTERBERRY, , *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On March 3, 2010, Plaintiff filed a Complaint and an Application to Proceed Without Prepayment of Fees and Costs.[1] (Document Nos. 1 and 2.) On March 8, 2010, Plaintiff filed a Motion to Dismiss. (Document No. 7.) On May 11, 2010, Plaintiff filed a second Motion to Dismiss. (Document No. 35.) Having examined all of the documents which Plaintiff has filed and considered the applicable law, the undersigned has determined that Plaintiff did not exhaust administrative remedies before commencing this action and therefore respectfully recommends that Plaintiff's Motions to Dismiss be denied and this matter be dismissed.

**PLAINTIFF'S CLAIMS**

By his Complaint (Document No. 1.), Plaintiff names as Defendants Mr. Kevin Canterberry, his counselor; Mr. Scotty Rose, a physicians assistant; Mr. Mike Cutwright; Dr. Edwards; Marti Owens, a registered nurse; Mr. Thomas Scarantino, Camp Administrator; David Berkebile, Warden; and Kevin Thompson in their official and individual capacities. Plaintiff states that in early

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

November, 2009, he was fired from his prison job in education "because of my participation in a RDAP required pull up" and assigned to work in food services. Plaintiff states that upon learning that he had been assigned to food services, he told his counselor Mr. Canterberry that his food services work hours interfered with his Jehovah's Witness religious meetings and he was taking two medications which made him drowsy and affected his concentration. (Id., p. 2.)[2] The record indicates that Plaintiff also began filing administrative complaints. Though Plaintiff complained, he was nevertheless required to begin working in food services. Plaintiff states that on November 14, 2009, he fell in the food services dining hall injuring his right shoulder and back. (Id., p. 3.) Plaintiff states that he went to Health Services for treatment and was excused from work for a few days. Plaintiff alleges that medical staff refused to treat him for the injuries which he had sustained. It appears that Plaintiff was authorized to take acetaminophen. (Id., p. 4.) Plaintiff indicates that he went to sick call several times through the end of November, 2009, and on December 8, 2009, x-rays were taken. (Id., p. 8.) About three days later, Health Services determined that Plaintiff had high blood pressure and prescribed atenolol. (Id., pp. 11 - 12.) On December 14, 2009, Plaintiff saw Dr. Edwards. Plaintiff states that Dr. Edwards told him that he should not have been designated to work in food services and his high blood pressure was caused by the pain he was experiencing. Plaintiff states that Dr. Edwards prescribed naproxen for his pain and placed him on medical hold. (Id., p. 12.) Plaintiff states that he requested an MRI to no avail and on February 5, 2010, was advised that he would not be treated any further for his pain. (Id., pp. 12 - 13.) Plaintiff states that thereafter he examined his medical file and found a report respecting the x-rays which had been taken. Plaintiff states that he requested an explanation of the report, and none was provided. Plaintiff asserts that by assigning him

---

[2] Plaintiff stated that he was taking Lithium and Valproic Acid. (Document No. 1, p. 10.)

to work in food services and in refusing to treat him for the injuries which he sustained there, Defendants acted with deliberate indifference for his safety and medical condition and with malice. Plaintiff request injunctive and monetary relief. (Id., pp. 13 - 14.)[3]

Plaintiff states that he exhausted administrative remedies (Id., p. 10.) and attached a copy of his administrative remedy documents to his Complaint as follows:

> Plaintiff's Inmate Request to Staff dated November 9, 2009 (Exhibit No. 1.), complaining that his assignment to food services interfered with his Jehovah's Witness meeting, impacted his safety because he was taking medications which made him groggy and affected his concentration and interfered with his RDAP studies and recovery. Mr. Canterberry responded informing Plaintiff of the days and times of approved Jehovah's Witness meeting, stating that "[a]ccording to health Services, the meds you are on would not prevent you from working a 'pm' shift job" and advising Plaintiff that he should work out the RDAP studies issue through the program. Mr. Canterberry stated that "[y]ou will not be moved out of the kitchen at this time."
>
> Plaintiff's Inmate Requests to Staff addressed to Health Services dated November 15, 25, 27 and 30, 2009 (Exhibit Nos. 2 - 5.), complaining of intense pain in his arm and shoulder as a consequence of his fall in the food services dining hall and requesting an MRI or x-ray, to be given time off to recuperate and to be assigned to other work than food services.
>
> Plaintiff's Inmate Request to Staff addressed to Dr. Edwards dated December 4, 2009 (Exhibit No. 6.), complaining that his pain was worsening and he was experiencing numbness in his legs and feet and headaches.
>
> The Regional Offices "Rejection Notice - Administrative Remedy" dated December 17, 2009 (Exhibit No. 10.), indicating that Plaintiff filed an administrative complaint at that office which was rejected because he (1) did not submit it on the proper form, a BP-10; (2) he did not include a copy of his institutional remedy request, a BP-9, indicating the response of the Warden; and (3) the issue he raised was not sensitive such that he could proceed straight to the regional level with his administrative complaint without processing it through the institutional level.

---

[3] Plaintiff attached a copy of the BOP Health Services sick call notes to his Complaint (Exhibits 25 - 31.) containing findings that Plaintiff had tenderness in his right shoulder, neck and back and that "[p]ain is subjective and out of proportion based on my physical exam." (Exhibit 26.)

> Plaintiff's Inmate Requests to Staff dated December 14, 2009, addressed to Mr. Thompson (Exhibit No 11.) and Dr. Edwards (Exhibit No. 12.) complaining of "severe pain and stress" which was worsening.
>
> Plaintiff's Inmate Request to Staff dated December 17, 2009, addressed to Dr. Edwards (Exhibit No. 13.) complaining that he was cleared for work in food services though he was on medical hold and placed on work restrictions.
>
> Plaintiff's Inmate Request to Staff dated January 4, 2010, addressed to Dr. Edwards (Exhibit No. 17.) complaining of pain in his feet and ankles and elsewhere, feeling sick because of the medication he was taking (Naproxen) and loss of strength and numbness in his right hand and arm.
>
> Plaintiff's Inmate Request to Staff dated January 29, 2010, addressed to Health Services and Dr. Edwards (Exhibit No. 15.) complaining of severe neck, back, leg, foot and shoulder pain, headaches, not sleeping well and feeling sick because of the Naproxen which Dr. Edwards had prescribed.
>
> Plaintiff's Inmate Requests to Staff dated February 4, 2010, addressed to Mr. Thompson (Exhibit No. 18.) and Mr. Scarantino (Exhibit No. 19.) complaining that though he continued to experience pain, Health Services staff was not doing any further diagnostic testing and refusing to treat him any further.
>
> Plaintiff's Inmate Request to Staff dated February 17, 2010, addressed to Health Services and Dr. Edwards (Exhibit No. 16.) requesting an explanation of the Radiology Report respecting his x-rays.

Thus, Plaintiff states that he "sent numerous requests to staff that went unanswered. Plaintiff filed a BP-9 with the BOP Regional Office which was rejected. Plaintiff forwarded a copy of the BP-9 to Warden Berkebile and no response was given within the allotted 20 day period . . .. Plaintiff has tried to work this problem out numerous times through the established prison channels and still suffered injury." (Id., p. 10.)

By his March 8, 2010, Motion to Dismiss (Document No. 7.), Plaintiff indicated his request that this matter be dismissed "at the Court's discretion out of Plaintiff's fear of further staff retaliation at the prison and FPC Beckley and fear of loss of liberty interest of sentence reduction in the RDAP program in pursuing Bivens action." By his May 11, 2010, Motion to Dismiss

4

(Document No. 35.), Plaintiff stated that "I no longer wish to pursue the issues in this matter. I will also be changing venue in 5 - 6 months and the Court will no longer have jurisdiction. Also no answer has been filed . . .."

Plaintiff has also filed a number of Affidavits including an Affidavit of Assault (Document No. 3.), an Affidavit of Assault by Drug Abuse Treatment Specialist (Document No. 9.), an Affidavit of Retaliatory Set Back by Residential Drug Treatment Specialists (Document No. 10.), an Affidavit of being Forced Back to Work While in Pain (Document No. 12.), an Affidavit of Being Exposed to Unreasonable Risk Once More (Document No. 13.), an Affidavit respecting Untreated Medical Conditions (Document No. 14.), an Affidavit respecting Civil Rights violations through RDAP (Document No. 17.), an Affidavit in Support of Res Judicata (Document No. 23.), an Affidavit respecting of Medical Staff Admittance (Document No. 28.) and an Affidavit respecting Opened Legal Mail by Staff at FPC/FCI Beckley (Document No. 30.). Plaintiff's statements in his Affidavits are generally the same as or support the allegations contained in his Complaint or raise issues beyond the scope of those allegations.

## DISCUSSION

Because Plaintiff alleges that Defendants were deliberately indifferent in assigning him to work in food services and in refusing to treat him for the injuries which he sustained there, it is clear that he is claiming that Defendants committed violations of his constitutional rights under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Having examined the record, the undersigned finds that it is apparent from the face of Plaintiff's Complaint and copies of documents which he has submitted that Plaintiff failed to exhaust administrative remedies with respect to his <u>Bivens</u> claim prior to filing his Complaint and

5

therefore respectfully recommends that Plaintiff's Complaint be dismissed.

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See</u> also <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. See <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may

not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal Court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting the plaintiff, the federal Court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an

8

affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in <u>Anderson</u>, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also</u> <u>see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaint, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4),

or under exceptional circumstances to the appropriate Regional Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. <u>Id.</u>, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. <u>Id.</u>, § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. <u>Id.</u>, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. <u>Id.</u>, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. <u>Id.</u>, § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. <u>Id.</u>, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. <u>Id.</u>, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. <u>Id.</u>, § 542.17(c). "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." <u>Id.</u>, § 542.18.

  The record reveals that Plaintiff submitted a number of informal "Inmate Request to Staff Member" forms pertaining to his assignment to food services, medical condition and treatment for the injuries which he sustained in falling while working in food services. It appears that he also submitted a BP-9 to the Regional Office rather than to the Warden's Office because he regarded his circumstances sensitive. The Regional Office, however, did not regard his circumstances sensitive and would not accept his BP-9 as he had not submitted his complaint to the Warden's Office. It

10

therefore does not appear that Plaintiff submitted the claims which he raises in his Complaint properly through the BOP's administrative remedy process to the Warden's Office, Regional Office or the Office of the General Counsel. It appears therefore that Plaintiff did not exhaust administrative remedies. For this reason, his Complaint must be dismissed.

Considering Plaintiff's allegations notwithstanding his failure to exhaust administrative remedies, it does not appear that he states a cognizable Eighth Amendment claim of deliberate indifference to his serious medical condition. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and

resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. See West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); Conner v. Donnelly, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.") Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

      The record reveals that Plaintiff was examined and x-rays were taken. Plaintiff was prescribed pain mediation, placed on medical hold and excused from work in food services for periods of time. Plaintiff disagreed with the course of his treatment, but an inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically

necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") An inmate is not entitled to the best possible care, only reasonable care. Geoff v. Bechtold, 632 F.Supp. 697, 698 (S.D.W.Va. 1986). It appears from the record that Defendants prescribed a course of treatment for Plaintiff's injuries. While Plaintiff disagreed with the course of treatment and wanted Defendants to assign him to work elsewhere than in food services, there is no indication that Defendants acted with deliberate indifference to his serious medical needs.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 2.) and Motions to Dismiss (Document Nos. 7 and 35.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: December 13, 2010.

R. Clarke VanDervort
United States Magistrate Judge